297 P.2d 227

The STATE of Utah, Plaintiff and Respondent,

v.

Wilbur J. STITES, Defendant and Appellant.

No. 8419.

Supreme Court of Utah.

May 14, 1956.

George K. Fadel, Bountiful, for appellant.

E. R. Callister, Jr., Atty. Gen., K. Roger Bean, Asst. Atty. Gen., for respondent.

HENRIOD, Justice.

Appeal from a conviction for misapplication of corporate moneys. Affirmed.

Appellant urges that 1) the information was insufficient to apprise him as to the offense with which he was to be tried or as to the facts constituting any particular offense, 2) that the court erred in refusing to grant motions to dismiss and in arrest of judgment, 3) that a motion for mistrial should have been granted, 4) that certain evidence was admitted erroneously and 5) that certain instructions were erroneously given or denied.

The information read as follows:

"That on or about the 3rd day of Dec. 1954 at the County of Cache,

State of Utah, the said defendant did then and there *as a director and an officer* of a *corporation* of Valley Motor Co., a Utah Corporation, wilfully, unlawfully and feloniously *misapply money of the said corporation* in the amount of $2,000 which he had received from Robert S. Budge which was the property of said corporation, contrary to the provisions of the statute of the State aforesaid. \* \* \*"

The statute to which this language obviously refers is Title 76–13–5, U.C.A.1953, whose pertinent part reads as follows:

"Every \* \* \* *director, officer* \* \* \* *of any corporation who* embezzles, abstracts or wilfully *misapplies* any of the *money* \* \* \* *of the corporation* \* \* \* is guilty of a felony \* \* \*."

Under Title 77–21–8, U.C.A.1953 an information is approved that states:

"so much of the definition of the offense, either *in terms* of the common law or *of the statute* defining the offense *or in terms of substantially the same meaning,* as is sufficient to give the court and the defendant notice of what offense is intended to be charged."·

██ We believe the information satisfied the provisions of 77–21–8, and we have italicized the phrases which we believe emphasize our conclusion and which reflect the employment of almost identical phraseology in the information as is found in the statute defining the offense. At the outset of the trial, a colloquy between court and counsel seemed to make it apparent that all knew what was the offense charged, but that the backbone of the accused's defense was to be that the offense required a criminal intent which counsel proposed he would show did not exist in the case.

██ We believe that the information also satisfied the general rule applicable where there may be no statute like 77–21–8, which rule requires, as stated by counsel for the state, that "the information \* \* \* must be sufficiently definite to 1) notify the defendant of the charge against him so as to enable him to prepare his defense, 2) identify the offense so that the defendant can successfully interpose a double jeopardy plea \* \* \* and 3) apprise the court of the issues before it so that it can properly rule on questions of evidence and determine the sufficiency thereof."

██ The contention 2) that the court erred in denying motions to dismiss and in arrest of judgment, is based on a claim that there was no evidence of fraudulent intent, a necessary element of the offense charged, counsel advancing the idea that since the accused owned all but four shares of the stock, he virtually *was* the corporation and practically its only shareholder, and that therefore he could have no intent to defraud himself. We believe and hold that so long as there is a misapplication of corporate money accompanied by the intent to prevent the corporation, as a cor-

poration, from *having* and *using* and making available such moneys for *corporate* as distinguished from personal or other use thereof, the violation of the statute is complete irrespective of whether the shareholders or creditors are injured. So long as the corporation is an entity and owns the money, and that money is withheld or taken and used for non-corporate purposes, as the jury could have found and did find here, there is no escape from the conclusion that there has been a wrongful and intentional *misapplication of corporate funds,* the very gist of the statute which specifically interdicts such manipulation of corporate assets.

This conclusion seems to be borne out by the federal cases [1] which have treated a similar federal statute from which our own statute on misapplication seems to have sprung.[2]

■ Appellant's third contention is that a mistrial should have been declared when a witness was asked who of those present were armed at a meeting at which accused was present, and he answered that the accused was. The question and answer came after defendant's counsel repeatedly complained that admissions made by accused were not shown to be voluntary and unintimidated, and a proper foundation had not been laid for their admission, the prosecutor claiming the question and answer indicated that accused could not have been intimidated since he was armed. The trial judge promptly excluded the answer and instructed the jury to disregard it. Under the circumstances we do not consider the cause of the accused was prejudiced so as to call for a mistrial.

■ Counsel complains 4) that the court erred in permitting two witnesses to testify that the defendant said he used the money to "cover another fictitious deal." This statement appears to be an admission and not a confession, and we can see no reason why it is incompetent or inadmissible. As to the contention that it was error to admit the corporate minute book containing unsigned minutes, an examination of such book makes it appear to us that there was nothing in the minutes that would prejudice defendant whether signed or not, they being routine minutes of the meetings of shareholders and directors held at the time of incorporation.

After examining the instructions as given by the trial court, we cannot agree that prejudicial error can be predicated on the giving or refusal to give any particular instructions to the jury.

McDONOUGH, C. J., and CROCKETT, WADE, and WORTHEN, JJ., concur.

1. Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830; Mulloney v. United States, 1 Cir., 79 F.2d 566; Galbreath v. United States, 6 Cir., 257 F. 648.

2. (See present 18 U.S.C.A. § 656; 62 Stat. 729.)